# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

TRACY A. LEACH, )
 )
      Plaintiff, )
 )
vs. ) Case No. 13-cv-360-TLW
 )
CAROLYN COLVIN, )
Acting Commissioner of Social Security )
Administration, )
 )
      Defendant. )

## OPINION AND ORDER

Plaintiff Tracy A. Leach seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 33). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 44-year old female, applied for applied for Title II and Title XVI benefits on August 20, 2009, alleging a disability onset date of April 27, 2007. (R. 149-52, 153-56). Plaintiff claimed that she was unable to work due to a heart attack, shortness of breath, and back pain. (R. 178). Plaintiff's claim for benefits was denied initially on February 18, 2010, and on reconsideration on July 14, 2010. (R. 82-85, 88-96, 100-05). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on June 30, 2011. (R. 47-76). The ALJ issued a decision on September 19, 2011, denying benefits and finding plaintiff not disabled because she was able to perform other work. (R. 29-46). The Appeals Council denied review, and plaintiff appealed. (R. 1-7, dkt. 2).

On appeal, plaintiff raises two points of error. Of these issues, only plaintiff's argument about the ALJ's credibility analysis requires remand.

**The ALJ's Decision**

The ALJ found that plaintiff was insured under Title II through December 31, 2010. (R. 34). Plaintiff had not engaged in any substantial gainful activity since April 27, 2007, her alleged onset date. Id. Plaintiff had severe impairments of "coronary artery disease, status post myocardial infarction, pacemaker placement (age 16); atrial fibrillation ablation; respiratory impairment; and scoliosis." Id. Plaintiff's impairments, however, did not meet or medically equal a listing. (R. 35).

The ALJ reviewed plaintiff's testimony and the medical evidence to establish her residual functional capacity. (R. 36-39). Plaintiff testified that shortness of breath limited her to walking 100 feet and standing for 15 to 20 minutes. (R. 36). Her low back pain limited her to sitting for 15 to 20 minutes. Id. She could drive short distances. Id. She needed assistance with chores, such as washing dishes and grocery shopping. Plaintiff also testified that she had to lie down in thirty minute intervals three times per day. Id. Shortness of breath also limited plaintiff's ability to walk or play with her grandchildren. Id. Plaintiff had lived with a pacemaker since she was a teenager, and it had been replaced approximately five times over the years. Id.

Plaintiff's medical records included an April 2009 EKG, which showed plaintiff's "left ventricle was mildly dilated," and both atria were dilated (R. 37). Plaintiff also had "mild mitral regurgitation and moderate tricuspid regurgitation." Id.

In December 2009, plaintiff underwent a consultative examination. Id. The doctor found a systolic murmur and diagnosed plaintiff with a number of cardiac issues. Id. The ALJ also focused on the examiner's findings with respect to plaintiff's scoliosis and range of motion. Id. The ALJ found that plaintiff's scoliosis restricted her back flexion slightly and caused plaintiff to have a positive straight leg raise on the left. Id. Plaintiff's gait was normal, and "[s]he had no difficulty getting up and down from the seated position." Id.

The ALJ also discussed plaintiff's myocardial perfusion test performed in October 2010. Id. That test showed no evidence of ischemia or prior infarction. Id. Plaintiff did have a "mild fixed perfusion defect." Id.

Plaintiff's pulmonary consultation in March 2011 revealed "moderate obstructive lung defect" that did not respond to a bronchodilator. Id. The ALJ noted, however, that plaintiff had

3

"stable saturation at 95 percent on room air" and was able to breathe normally based upon the pulmonologist's visual and physical examination. (R. 37).

Further cardiac examinations in March and April 2011 were unremarkable. (R. 38). The ALJ noted that Dr. Frank Gaffney reported that plaintiff "was doing quite well" and that plaintiff's shortness of breath was not related to her heart issues. Id. The second cardiologist, Dr. Mark Trimble, found that plaintiff was breathing normally. Id. Dr. Trimble diagnosed plaintiff with atrial fibrillation, dyspnea, hypertension, and palpitations. Id. Plaintiff's May 2011 visit revealed that plaintiff was "stable" and that she "denied any problems." Id.

The ALJ gave "considerable weight" to plaintiff's treating physician and to Dr. Williams' consultative examining report. (R. 39). The ALJ gave great weight to the recent reports from Dr. Gaffney and Dr. Trimble. Id. The ALJ noted that those reports show that plaintiff was "stable on her current medication" and "doing well." Id.

The ALJ found that plaintiff was not entirely credible. (R. 38). The ALJ's credibility analysis was set forth as follows:

> In some of the doctors' notes, the claimant did remark that she has taken care of her grandchildren, in particular, while they were sick. In her function report, she stated she did not take care of anyone else besides herself, but there is evidence that she does occasionally take care of her grandchildren. She does go shopping. She can do light housework. She also stated she has to have a wheelchair or power chair all the time. She was not using any assistive devices during her examination.

Id. The ALJ conducted no further credibility analysis, other than the use of the standard, boilerplate language regarding credibility.

The ALJ concluded that plaintiff could perform sedentary work with the following restrictions: no climbing ladders, ropes, and scaffolds; and no exposure to extreme temperatures, humidity, or irritants. (R. 35). The ALJ found that, while plaintiff could not perform her past

relevant work as a school cook and cafeteria server, she could perform sedentary work as a clerical mailer, trimmer, or assembler. (R. 40). Accordingly, the ALJ found plaintiff not disabled.

## ANALYSIS

Plaintiff argues that the ALJ failed to conduct a proper credibility analysis by relying only on boilerplate language and improper inferences. (Dkt. 20). The Commissioner argues that the ALJ's credibility findings are supported by substantial evidence because the ALJ properly relied on plaintiff's activities of daily living and the medical evidence. (Dkt. 21). The ALJ relied on two factors in his credibility analysis: (1) plaintiff's activities of daily living; and (2) inconsistencies between plaintiff's testimony and the record.

The ALJ's depiction of plaintiff's activities of daily living is not supported by the evidence. The medical records contain one instance in which plaintiff cared for her grandchildren. In September 2009, plaintiff sought treatment with her primary care physician, complaining of a cough, fever, and stomach pain. (R. 700). Plaintiff stated that she started having symptoms after caring for her sick grandchildren. Id. The record contains no evidence that plaintiff cared for her grandchildren on a regular basis, and plaintiff explicitly denied regularly caring for her grandchildren at the hearing. (R. 61-62). Instead, plaintiff testified that she wanted to play with her grandchildren when they visited, but she could only handle five minutes of exertion before she experienced shortness of breath. (R. 62). When asked about the note in the medical records, plaintiff explained that the grandchildren got sick while visiting her home with their parents and that she was not serving as their caregiver when she got sick. Id.

The ALJ's characterization of plaintiff's ability to shop and do household chores is also greatly exaggerated in comparison to plaintiff's testimony. (R. 38, 63-64). Plaintiff testified that she never goes grocery shopping alone. (R. 63). Plaintiff relies on a shopping companion to "get

the groceries and put [them] in the cart and [lift] stuff that I can't lift." (R. 63). Plaintiff stated that she simply carried a list. Id. Plaintiff also testified that she tried to do chores like sweeping, vacuuming, and washing dishes, but her husband always had to finish the chores. (R. 64). Plaintiff's testimony is the only evidence of her ability to do these activities, and the ALJ's summary conclusion that plaintiff can "go shopping" and "do light housework" is not substantially supported by plaintiff's testimony.

Finally, the ALJ concluded that plaintiff did not tell the truth about her use of assistive devices. The ALJ found that plaintiff's statement that "she has to have a wheelchair or power chair all the time" was inconsistent with the medical records, which showed that plaintiff never appeared at any appointment with an assistive device. (R. 38). What plaintiff actually wrote in her function report was that she felt she needed a wheelchair or power chair all the time. (R. 191).

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler

v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). The Tenth Circuit has also recently held that, in reviewing an ALJ's decision, the reviewing court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

While the ALJ's findings are entitled to deference, in this case, they are simply not supported by substantial evidence. The Tenth Circuit recently reversed and remanded a case on a similar set of facts. See Jones v. Colvin, 514 Fed.Appx. 813, 819-24 (10th Cir. 2013) (unpublished). In Jones, the ALJ made a number of credibility findings that were not supported by the record and "failed to expressly consider" the claimant's testimony about her activities of daily living. Id. at 824. Because the ALJ made a number of errors in assessing the claimant's credibility, the Tenth Circuit found that "the ALJ's omissions here go beyond the merely technical and call into question the ALJ's application of the appropriate legal standards." Id. In the instant case, in light of the number of factual errors cited in the limited credibility analysis, remand is proper.

Alternatively, the ALJ's reliance only on activities of daily living likely would not be sufficient to support his credibility finding that plaintiff did not suffer disabling pain. The Tenth Circuit has held that an ALJ may not rely on activities of daily living alone as substantial evidence that a claimant does not have disabling pain. See Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). In this case, plaintiff alleges error, in part, because the ALJ failed to account for plaintiff's complaints of back pain and chest pain. Plaintiff's complaints of chest pain are of particular import because a report from her former cardiologist indicated that plaintiff had chest pain with exertion several times a month and needed to rest to recover. (R. 623). Plaintiff testified that she could only walk 100 feet before experiencing shortness of breath. (R.

60). The ALJ's reliance on plaintiff's activities of daily living is insufficient to constitute substantial evidence that plaintiff does not have disabling pain, especially in light of the ALJ's misinterpretation of the evidence.

**CONCLUSION**

Because the ALJ's credibility findings are not supported by substantial evidence, the ALJ's decision is **REVERSED AND REMANDED** for further proceedings.

SO ORDERED this 15th day of July 2014.

_____
T. Lane Wilson
United States Magistrate Judge